**THE MARY E. SHERIDAN.**

**THE BROOKLYN.**

No. 12531.

District Court, E. D. New York.

April 6, 1932.

Macklin, Brown, Lenahan & Speer, and R. F. Lenahan, all of New York City, for libelant.

Thomas A. McDonald, of New York City, for claimant.

CAMPBELL, District Judge.

This is an action brought to recover for damages alleged to have been caused by collision.

I find the facts as follows:

At all the times hereinafter mentioned and at the time of the trial the libelant was the operating manager of the canal boat Mary E. Sheridan, which at all of said times, prior to the incidents hereinafter referred to, was tight, staunch, strong, and in all respects seaworthy.

The steamer Brooklyn was, during the currency of process herein, within this district and the jurisdiction of this court.

On the 28th day of April, 1931, the canal boat Mary E. Sheridan, bound east, came down the New York State Barge Canal as the head boat in a tow of four boats, tandem, which fleet because of a storm on Oneida Lake was, at about 7 o'clock p. m., made fast outside of four other fleets at the North Terminal at Brewerton, N. Y.

There was a wall at the terminal about 1,000 feet long and ahead of the five fleets referred to, and made fast to the said wall was the steam tug Robin Hood. Between the said fleets and the bridge other boats were moored at said wall.

The Mary E. Sheridan was the outside boat of five boats moored abreast and her outer side was out about 135 feet from the said wall.

The channel of the canal below the wall toward the lake was about 200 feet wide and in front of the terminal about 250 feet wide, and had been redredged in 1926 to a depth of 16 feet.

Boats usually tied up at the wall in question, but generally not more than four abreast, and this was known to the master of the Brooklyn.

The course for boats going west and navigated with reference to the range lights would just bring a portion of the Sheridan within the range.

The wind was canting from southwest to southeast, and was blowing heavily on the lake, but not heavily at the terminal. The lake is about one-half mile from the terminal.

The steamer Brooklyn, with five light barges in tow tandem, on a short hawser, had crossed the lake bound west, being assisted for a part of the distance by another tug. Before starting to cross the lake, the lines between the boats of her tow had been lengthened to protect the boats from bumping. No provision was made for steering the Brooklyn tow.

Boats in tandem tow on the canal, according to custom, are made up close together. The Brooklyn, when she had crossed the lake, did not stop in the canal between the lake and the terminal and shorten the lines between the light boats of her tow, according to general custom, but continued on steering by the range lights.

When about 150 to 200 feet from the Mary E. Sheridan, the Brooklyn first observed the Mary E. Sheridan and put her searchlight on the barges tied up at the terminal, and then put her helm hard-astarboard, and at about 9:40 o'clock p. m., the Brooklyn and the first two boats of her tow cleared the Mary E. Sheridan, but the third boat, at the forward end of her cabin, came into contact with and damaged the starboard side of the Mary E. Sheridan, and the bows of the fourth and fifth barges of the Brooklyn's tow struck the starboard forward corner of the Mary E. Sheridan, inflicting damage on her, all of which damage was above the water line.

The Brooklyn and her tow continued on, and the captain of the Mary E. Sheridan spoke over the telephone to the master of the Brooklyn at Lock 23, and asked him if he knew he had done considerable damage, and he said, "You were five boats wide and had only a small light out."

There was a large bright white light on the starboard bow of the Mary E. Sheridan. The Brooklyn failed to maintain an efficient lookout.

So much of Regulation 11 of the Navigation Regulations of the Canal as is necessary for consideration herein provides as follows:

"Reg. 11. *Mooring of boats in channel.*—No boat shall be moored or tied in the canal channel at any point where its presence will interfere with navigation. ⁕ ⁕ ⁕ "

The Mary E. Sheridan was somewhat beyond the center of the clear water between the terminal wall and the south side of the canal, but there remained over 100 feet of clear water in the channel in which the Brooklyn could navigate.

From the facts as found, the fault of the steamer Brooklyn is apparent. The Brooklyn failed to maintain an efficient lookout or the large bright white light on the Mary E. Sheridan would certainly have been seen and the collision averted. The Brooklyn failed and neglected to stop and have the boats of her tow made fast close up to each other as is the custom on the canal. The master of the Brooklyn knew that it was the custom for tows to tie up at the terminal when there was a storm on the lake, and should have maintained an efficient lookout to warn of boats tied up at the terminal.

Regulation 11 of the Navigation Regulations does not seem to me to be in point, as there remained over 110 feet between the Mary E. Sheridan and the south side of the channel in which the steamer Brooklyn could navigate, and, considering her narrow beam and the narrow beam of the barges in her tow, there remained ample room in the channel of the canal in which the Brooklyn could safely navigate with her tow, and, as the Mary E. Sheridan was showing better than the customary light, if a proper lookout had been maintained, the Mary E. Sheridan should have been observed in time to prevent any damage.

The steamer Brooklyn did not, in accordance with custom, stop as she might have done between the terminal and the lake, and make fast the boats in her tow close together, and this made possible a swing of the boats of her tow and increased the damage to the Sheridan by allowing the forward corners of the last two boats in the tow of the Brooklyn to contact with the Sheridan.

There was an emergency which caused the tying up of the Sheridan at the terminal— the storm on the lake where she had been but about two hours at the time of the collision. Notice of her presence was given by her light, and there remained over 100 feet in the channel in which the Brooklyn and her tow could safely navigate.

I find as conclusions of law:

That the steamer Brooklyn was negligently and carelessly navigated so that she, a moving vessel, brought her tow into contact with the boat Mary E. Sheridan, which was securely moored outside of four other boats at the North Terminal, in the New York State Barge Canal, at Brewerton, N. Y., and displaying the regulation light, and as so moored leaving more than 100 feet in width of clear water in the canal, in which the steamer Brooklyn and her tow could safely navigate, and that said tow of the steamer Brooklyn inflicted severe damage upon the boat Mary E. Sheridan, for which the steamer Brooklyn is wholly at fault.

That neither the libelant, his agents, servants, or employees, nor the boat Mary E. Sheridan, in any way caused or contributed to such damages, and they are wholly without fault.

That the libelant is entitled to recover, from the steamer Brooklyn his damages, with interest and costs, and to have the usual order of reference.

That a decree may be entered in accordance with this opinion. Settle decree on notice.

If this opinion is not considered a sufficient compliance with Rule 46½ of the Rules in Admiralty, findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court, as provided by the rules of this court.